UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RANDALL B. HOFLAND, ) | |
| ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | Civil No. 9-174-B-W |
| ) | |
| R. THOMPSON, et al. ) | |
| ) | |
|     Defendants ) | |

**RECOMMENDED DECISION**

Randall Hofland has filed multiple civil actions in this court within the last year.[1] In this lawsuit he has sued Twin Bridges Regional Jail and several corrections officers. Hofland was housed as a pretrial detainee at Twin Bridges from April 15, 2009, until sometime in June 2009, when the court docket indicates that he was released (see Doc. No. 18) and subsequent filings by Hofland in other, unrelated cases, revealed he had been relocated to another facility. In this case Hofland claims violations of his constitutional rights, allegations related primarily to limitations placed upon his television viewing and, potentially more significantly, a claim that jail officials improperly seized his legal materials and denied him reasonable access to those materials and legal research materials. It is important to note that the only relief requested by Hofland in his complaint is injunctive relief; his amended complaint and response to the motion to dismiss do not address other remedies.

As the pleadings evolved, it became apparent that Two Bridges Regional Jail personnel returned most of Hofland's legal material and the dispute devolved into a complaint about the adequacy of the "federal" materials available to Hofland through the jail's law library.

---

[1] See Civil Nos. 9-162-B-W, 9-172-B-W, 9-173-B-W, 09-201-B-W, 09-218-B-W, 09-343-B-W.

Hofland filed this suit on May 4, 2009, and the defendants moved for dismissal on June 23, 2009.  After numerous requests for extension had been granted, Hofland finally responded to the motion to dismiss on October 20, 2009.

## DISCUSSION

### A.  *First Amended Complaint Allegations*

Hofland's first amended complaint, filed on May 21, 2009, reveals that on April 15, 2009, he was transferred from Penobscot County Jail to Two Bridges Regional Jail, apparently because he had been involved in a serious physical altercation with another inmate.  Because of the prior incident, Hofland's classification at Two Bridges was as a maximum security inmate.

According to Hofland, the maximum security block at Two Bridges houses four inmates and has a single television which all cells can see.  The volume must be adjusted upwards in order for all four inmates to hear the television.  When Hofland first arrived at the jail correctional officers and other inmates resisted his efforts to watch the evening news and only allowed him to view the morning news.  During his one hour of free-time each day Hofland was able to view and hear the programs of his choice, but that free-time never coincided with the evening news broadcast.  Gradually Hofland was able to reach accommodation with some of the correctional officers regarding his access to both the evening and morning news.

In early May 2009 the teams of correctional officers covering Hofland's cell area changed and Officer Ewing began working on weekend nights.  Other inmates began watching a movie between 5:00 p.m. and 7:00 p.m., "impairing" Hofland's access to the evening news. While other officers assisted Hofland, Ewing deliberately turned off the television to prevent Hofland from watching the news.

On May 11, 2009, Officer Read took over control of the maximum security block and began a "pattern of harassment" of Hofland, including not only "severe impairment" of morning news viewing, but also placing limitations on the amount of legal work that was allowed in the cell with Hofland. Read began enforcing a "series of unwritten rules" that had not previously been invoked. Hofland attributes this enforcement in part to the fact that Lieutenant Archer had become the day-shift supervisor.

Hofland claims that as a pretrial detainee he has a constitutional right to read newspapers and view morning and evening television news programs without interference from other inmates or jail staff.

According to Hofland, on May 12, 2009, defendant Read opened the "meal slot" on his cell door and removed the sign he had posted in his cell window which read "ABC News, Ch. 8, 6-7 p.m." Shortly thereafter Defendants Read, Archer, Thompson, and four other officers opened Hofland's cell door and Archer demanded that he turn over to them an unspecified number of his documents and file folders. After a heated discussion Hofland began to hand over the materials on his desk and then tried to hand Archer two novels he had just finished. Archer "went ballistic" and grabbed Hofland's arms, pinning him against the wall. Read and the other officers then entered the cell and took all of Hofland's legal files and paperwork, putting them in a storage box kept outside the cell which already contained the other half of Hofland's legal documents.

Thompson later returned about one half of Hofland's legal files, allowing Hofland to resume some legal work. However, Hofland complains that the jail lacks federal library materials and limits his access to law library books.

In his response to the motion to dismiss (Doc. No. 45) Hofland clarifies that his complaint relates to the perceived "arbitrariness" of the various rulings regarding television viewing and access to legal materials.  He also claims that he plans to mount a challenge to the constitutionality of unspecified Maine statutes and regulations dealing with county sheriffs and jail operations.  Clearly any such challenge is beyond the scope of this lawsuit, which targets five officers employed at the Two Bridges Regional Jail for having allegedly violated Hofland's constitutional rights.

### B.     Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6), the procedural vehicle for the defendants' motion, provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted."  In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery.  Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). To properly allege a claim in federal court, it is not enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Additionally, because Hofland is a pro se litigant, his complaint is subjected to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).  As a pro se  litigant, his pleadings also may be interpreted in light of supplemental submissions, such as his response to the motion to dismiss. Gray v. Poole, 275 F.3d 1113, 1115 (D.C.Cir.2002); Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003).

4

*C.     Mootness*

As already observed, Hofland has framed this case as being one solely seeking injunctive relief. Hofland is no longer at Twin Bridges. On this point alone, this action is subject to dismissal. See Tyree v. Fitzpatrick, 445 F.2d 627, 628 -29 (1st Cir. 1971); Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 249 (4th Cir. 2005); Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993); see also City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); American Postal Workers Union v. Frank, 968 F.2d 1373, 1376 (1st Cir. 1992).

*D.     Hofland's Claims*

   *1. First Amendment Rights*

      *a. Access to a particular television news broadcast*

With regards to Hofland's claim that his First Amendment rights are violated by the denial of access to the news programming he seeks, there is a serious question as to whether or not he has such a right. See Mitchell v. Caruso, No. 1:05-CV-728, 2007 WL 603399, 7 -8 (W.D. Mich. Feb. 22, 2007) (recommended decision) ("It is well established that prisoners do not have any constitutionally protected right to watch television.") (collecting cases).[2]

---

[2]     Magistrate Judge Scolville addressed in Mitchell a claim by an inmate seeking access to the cable program "Prison Break." He collected the following cases::
See Scheanette v. Dretke, No. 05-41628, 2006 WL 2474486, at * 1 (5th Cir. Aug.28, 2006); Elliott v. Brooks, Nos. 98-1470, 98-8032, 1999 WL 525909, at * 1 (10th Cir. July 20, 1999); Rawls v. Sundquist, No. 96-5931, 1997 WL 211289, at * 1 (6th Cir. Apr.28, 1997); Murphy v. Walker, 51 F.3d 714, 718 n. 8 (7th Cir.1995); Dede v. Parker, No. 93-2319, 1994 WL 198179, at * 2 (6th Cir. May 18, 1994); Montana v. Commissioners Court, 659 F.2d 19, 23 (5th Cir.1981); Edwards v. Braxton, No. 7:04-CV-550, 2005 WL 1388746, at * 3 n. 1 (W.D.Va. June 10, 2005); Davis v. Lawson, No. 3:05 CV 128, 2005 WL 2293752, at * 4 (N.D.Ind. Sept.19, 2005); Turner v. McKune, No. Civ. A. 00-3456-KHV, 2001 WL 1715793, at * 4 (D.Kan. Dec.21, 2001); Bagwell v. Brewington-Carr, No. Civ. A. 97-714-GMS, 2000 WL 1239960, at * 3 (D.Del. Aug.25, 2000) (collecting cases); Revers v. Berks County Prison, No. 88-5700, 1998 WL 147587, at * 1 (E.D.Pa. Dec. 29, 1998); Manley v. Fordice, 945 F.Supp. 132, 138 (S.D.Miss.1996); Schneider v. Marshall, No. C 92-1193 SBA, 1993 WL 255518, at * 1 (N.D.Cal. June 24, 1993); Lovern v. Cox, 374 F.Supp. 32, 34 (W.D.Va.1974). "Without such an underlying right, it follows with even stronger reason that there is no constitutional right to satellite/cable equipment for a television." Rawls v. Sundquist, 929 F.Supp. 284, 289 (M.D.Tenn.1996). "Without such a right, it follows, *a fortiori*, that any restriction placed on use of the television cannot deprive inmates of a constitutionally protected right." Glasshofer v. Jeffes, No. 87-478, 1989 WL 95360, at * 2 (E.D.Pa. Aug.10, 1989),

However, even assuming that there is a First Amendment right that extends to access to televised news programs, see, e.g., Jewell v. Gonzales, 420 F. Supp. 2d 406 (W.D. Pa. 2006); see generally Kleindienst v. Mandel, 408 U.S. 753, 762-63 (1972) (acknowledging First Amendment right to receive information and ideas) (citing Martin v. City of Struthers, 319 U.S. 141, 143 (1943) and Stanley v. Georgia, 394 U.S. 557, 564 (1969)), per Hofland's own allegations he is not alleging that there is a policy at Two Bridges that prevents maximum security inmates from watching news programs, compare Feeley v. Sampson, 570 F.2d 364, 375 (1st Cir. 1978): Jewell, 420 F. Supp. 2d 406; Mitchell v. Caruso, No. 1:05-CV-728, 2007 WL 603399, 2 -5 (W.D. Mich. Feb. 22, 2007) (adopting recommended decision); Glasshofer v. Jeffes, CIV. A. No. 87-478, 1989 WL 95360, 3 -4 (E.D. Pa. Aug. 10, 1989). Rather, Hofland is complaining that other inmates do not want to watch the news and would watch movies in the 5 p.m. to 7 p.m. time period, Officer Ewing deliberately turned off the television to prevent Hofland from watching the news, and Officer Read began a "pattern of harassment" including "severe impairment" of Hofland's morning news viewing. These allegations are pertinent to Hofland's equal protection claim discussed below but they do not support a plausible First Amendment right to information claim.

---

affirmed sub nom., Glasshofer v. Owens, 897 F.2d 521 (3d Cir.1990). Because plaintiff does not enjoy a federally protected right to watch "Prison Break" on cable television, defendant is entitled to judgment in her favor as a matter of law.
Id. at 7-8.

### b. Access to the courts

There is no question that Hofland, as a pre-trial detainee, has a constitutional right to access to the courts. See Bounds v. Smith, 430 U.S. 817 (1977). But the Supreme Court has made it clear that to proceed with such a claim a plaintiff must allege an actual, tangible interference with a court proceeding. See Christopher v. Harbury, 536 U.S. 403 (2002) (Federal Rule of Civil Procedure 8 dismissal); Lewis v. Casey, 518 U.S. 343, 351-52 (1996) (three-month bench trial)[3]. As the defendants point out, Hofland has not alleged that the interference by any of the defendants with his legal materials has tangibly impacted his ability to seek redress with the courts or to defend himself in a criminal proceeding. He does not even make such a case in his response to the motion to dismiss. His argument in that memorandum focuses on the irony that he is not able to get a full copy of Bounds in order to respond to the defendants' argument on access to the court. Hofland can rest assured that this court has fully considered the entire Bounds decision as it applies to Hofland's allegations and not just the snippets referenced by the defendants. Given his participation in this litigation and his multitudinous filings in other cases in this court, I am confident that Hofland has not stated a denial of access claim because of his inability to access the full opinions and the temporary confiscation of his legal papers. See Dupont v. Dubois, No. 96-1459, 1996 WL 649340, 1 (1st Cir. Nov. 6, 1996) ( unpublished).

---

[3] The Lewis majority reflected:
> Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Id. at 355.

### *2. Substantive Due Process*

Hofland's substantive due process right theory is that Thompson failed to address the interference with Hofland's viewing of news programs, which he insists is his right and not a privilege. (Resp. Mot. Dismiss at 2.) This theory of recovery is on all fours with the discussion of a supervisory substantive due process claim in Maldonado v. Fontanes, 568 F.3d 263, 274 - 275 (1st Cir. 2009)[4] and, to the extent that he pled one, Hofland's substantive due process claim should be dismissed.

### *3. Eighth, Ninth. and Tenth Amendments*

In his responsive memorandum Hofland articulates his Eighth, Ninth, and Tenth Amendment theories as directed at the alleged capricious and arbitrary acts of Two Bridges staff. (Resp. Mot. Dismiss at 3.) He complains of Ewing's behavior of turning the news off and turning the TV back on again when it was over. I assume that by citing these three amendments, Hofland is asserting a cruel and unusual punishment theory. See Farmer v. Brennan, 511 U.S. 825 (1994). If Hofland's allegations about Ewing and Read are true then it might be fair to characterize their conduct as capricious, arbitrary, and adolescent. However, as a cruel and unusual punishment claim Hofland's is frivolous. See Johnson v. Unknown Dellatifa, 357 F.3d 539, 545-46 (6th Cir. 2004); Mortimer Excell v. Fischer, Civ. No. 9:08-CV-945 (DNH/RFT), 2009 WL 3111711, 5-7 (N.D.N.Y. 2009); Doyle v. Jones Nos. 1:06-cv-628, 1:06-cv-630, 2007 WL 4052032, 9 (W.D. Mich. 2007); Doe v. Magnusson, Civ. No. 04-130-B-W, 2005 WL 758454, 15 (D. Me. Mar, 21, 2005) (collecting cases) (recommended decision), adopted, 2005 WL 859272 (D. Me. Apr. 14, 2005).

---

[4] Which is not to say that the conduct of which Hofland complains is at all equivalent to "the precipitous seizures and cruel killings of … pet cats and dogs" in Maldonado, 568 F.3d at 266.

8

### *4. Equal Protection Class of One*

In his amended complaint Hofland cites <u>Village of Willowbrook v. Olech</u> which acknowledged that there could be such a things as "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." 528 U.S. 562, 564 (2000) (citing <u>Sioux City Bridge Co. v. Dakota County</u>, 260 U.S. 441 (1923) and <u>Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.</u>, 488 U.S. 336 (1989)). "In so doing," the Court reiterated that the " ' "purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." ' " <u>Id.</u> (quoting <u>Sioux City Bridge Co.</u>, 260 U.S. at 445, in turn quoting <u>Sunday Lake Iron Co. v. Township of Wakefield</u>, 247 U.S. 350, 352 (1918)). Hofland revisits his reliance on <u>Village of Willowbrook</u> in his response to the motion to dismiss. (Resp. Mot. Dism at 3-4.) <u>Iqbal</u> focused on an equal protection claim and, although not a 'class of one' equal protection theory, it did make it quite clear that at the pleading stage a plaintiff must do more than allege "I was wronged" and must have a plausible factual basis for the claim. Hofland alleges random, snarky acts of shutting off his news program and temporarily taking his legal papers, acts targeted at one of four inmates in this section of the jail. However, he does not allege that other inmates making similar programming requests were treated differently than he was. <u>See</u> <u>Buchanan ex rel. Buchanan v. Maine</u>, 417 F.Supp.2d 24, 37-39 (D.Me. 2006).[5] In this case, assuming Hofland's allegations are true, he is complaining about conduct akin to name calling and simple verbal harassment. His allegations simply do not rise to the level of a constitutional violation. <u>See, e.g., DeWalt v. Carter</u>, 224 F.3d 607, 612 (7th

---

[5]      <u>But</u> <u>see</u> <u>West v. Frank</u>, 492 F.Supp.2d 1040, 1049 (W.D. Wis. 2007).

Cir. 2000) ("The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution. Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.") (citations omitted); cf. Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991) ("It is well established that not every state tort constitutes a violation of a protected federal right simply because it is committed by the state. The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest.")(citations omitted).

### 5. *Municipal Liability*

With respect to Twin Bridges Regional Jail's liability, Hofland insists that he can proceed on a theory of municipal liability against Twin Bridges. The answer is no. First, I have already determined both that his action is moot because his only request is for injunctive relief and that Hofland has not stated a claim against any individual defendants involved in the alleged conduct and the jail cannot be held liable unless there is one or more underlying constitutional violations. See Wilson v. Town of Mendon, 294 F.3d 1, 6 -7(1st Cir. 2002); see also Bowman v. Corr. Corp. of America, 350 F.3d 537, 544-47, (6th Cir. 2003). Second, Hofland has not alleged that the jail as a 'municipal entity' had any knowledge of the alleged conduct of the correctional officers that could possibly support a claim that it was deliberately indifferent to the alleged constitutional violations enumerated by Hofland. See City of Canton v. Harris, 489 U.S. 378, 388 (1989); Oklahoma City v. Tuttle, 471 U.S. 808, 822-23 (1985); Walker v. Prince George's County, 575 F.3d 426, 431 (4th Cir. 2009).

## CONCLUSION

For these reasons I recommend that the Court grant the motion to dismiss (Doc. No. 21) as to all the claims against all the defendants.  As is apparent from my recommendation, I further recommend that the Court terminate as moot Hofland's request for preliminary injunctive relief (Doc. No. 10) filed on May 29, 2009, and seeking a restraining order against certain Two Bridges' jail personnel.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 29, 2009